UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WATKINS, | No. 2:17-cv-1041 JAM AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| D. MURPHY, | |
| Defendant. | |

I. Introduction

Plaintiff James Watkins is a state prisoner at R.J. Donovan Correctional Facility, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se with a First Amended Complaint (FAC) against sole defendant Correctional Officer D. Murphy, on a claim of excessive force during plaintiff's prior incarceration at High Desert State Prison (HDSP). See ECF No. 7.

Currently pending is plaintiff's motion for summary judgment. ECF No. 28. This matter is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons set forth below, the undersigned recommends that plaintiff's motion be denied and this case proceed to trial.

////

////

1

II. Background

As set forth in his FAC, plaintiff alleges that on August 18, 2016, defendant Murphy used excessive force "when he punched me and slammed me to the ground causing injury to my jaw." ECF No. 7 at 3. Plaintiff seeks $50,000 in compensatory damages, and $5000 in punitive damages. Id. at 3-4, 6. Upon screening the complaint pursuant to 28 U.S.C. § 1915A, the court found that the FAC states a cognizable claim against defendant Murphy for the use of excessive force in violation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. See ECF No. 11 at 3. Defendant answered the complaint on March 20, 2018. ECF No. 18.

The court issued a discovery and scheduling order on March 22, 2018. ECF No. 19. The parties' discovery disputes resulted, inter alia, in orders directing defendant to lodge with the court a CD containing a videotape of plaintiff's post-incident interview (plaintiff has viewed the videotape), and to permit plaintiff to review a document entitled "Institutional Executive Review Committee (IERC) Critique and Qualitative Evaluation," dated December 2, 2016. See ECF No. 55.

Plaintiff filed his motion for summary judgment on June 27, 2018. ECF No. 28. On August 14, 2018, defendant filed an opposition to plaintiff's motion, ECF No. 36, and a notice of intent *not* to file a motion for summary judgment, ECF No. 37. Defendant contends in both filings that material factual disputes preclude summary judgment in this case. Plaintiff replied to defendant's opposition, ECF No. 62, and defendant filed an authorized surreply, ECF No. 64.

In his motion and reply, plaintiff seeks to expand the claims in this case beyond the excessive force claim found cognizable by the court in screening the FAC pursuant to 28 U.S.C. § 1915A. Plaintiff alleges additional facts in support of his putative new claims under the First, Fourth and Fourteenth Amendments, including the alleged denial of due process, and he asserts a second Eighth Amendment claim based on the alleged deliberate indifference to plaintiff's serious medical needs. See ECF Nos. 28, 62.

Plaintiff's new allegations and claims were not included in the operative FAC, nor may they reasonably be inferred. Nor, at this juncture, does justice require that plaintiff's presentation

of these matters be construed as a motion to further amend the complaint. See Fed. R. Civ. P. 15(a)(2) (absent the opposing party's consent, a court should "freely give leave" to amend "when justice so requires"). For these reasons, the court's analysis is limited to the merits of plaintiff's excessive force claim.

A settlement conference was held in this case on January 15, 2019, but the case did not settle. See ECF No. 65.

III. Legal Standards

A. Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, "[a] [p]laintiff's verified complaint may be considered as an affidavit [. . .] if it is based on personal knowledge and sets forth specific

3

facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[1]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material

---

[1] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

4

facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

          B.     Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

When determining whether the force was excessive, we look to the "extent of the injury . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).

"The extent of injury may . . . provide some indication of the amount of force applied. . . . [N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that

5

causes no discernible injury almost certainly fails to state a valid excessive force claim. [¶] Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 559 U.S. at 37-8 (citations and internal quotation marks omitted).  While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, at 9 (citing Whitley, at 327).

### IV. Facts

The only undisputed material fact in this case is that the challenged incident between plaintiff and defendant occurred on August 18, 2016. The parties dispute all other facts. Plaintiff expressly concedes that the motive for defendant's alleged use of force "is clearly a genuine issue of fact [that is] . . . material." ECF No. 28 at 8. Defendant contends that the parties' disputed versions of the relevant facts render summary judgment inappropriate. See ECF Nos. 36, 64.

Plaintiff made the following allegations in his verified FAC, ECF No. 7 at 3:

> On Aug. 18, 2016, D. Murphy at High Desert State Prison used unnecessary and excessive force on me without provocation when he punched me and slammed me on the ground causing injury to my jaw. D. Murphy's act[s] (sic) violated the 8th Amendment prohibition against cruel and unusual punishment.

Attached to the FAC are copies of the relevant prison administrative decisions. The final (third level) decision recounts plaintiff's allegations in pertinent part as follows, ECF No. 7 at 7:

> It is the appellant's position that High Desert State Prison (HDSP) staff acted unprofessionally towards him and utilized unnecessary and excessive force upon him. The appellant alleges on August 18, 2016, during mass cell searches, Correctional Officer (CO) D. Murphy battered him. The appellant states CO Murphy "grabbed me real hard and pulled me." The appellant states when he asked why he was pulling so hard, CO Murphy responded, "You are eye fucking me" and the appellant responded, "I can look where I want to." The appellant alleges CO Murphy hit him on the left side of his mouth and took him to the ground and called him "a piece of shit."' The appellant contends he was assaulted by CO Murphy and to cover it up, CO Murphy lied and issued him a CDC Form 115, Rules Violation Report.

In contrast, defendant Murphy has filed a verified declaration which avers in pertinent part, ECF No. 36-2 at 2-3:

2. On Thursday, August 18, 2016 – the date of the incident at issue in this case – I was assigned to the position of Facility A Gym Security Officer. At approximately 0947 hours, multiple custody staff members, including myself, were conducting mass cell searches in Facility B, Building 5. When I approached cell 205, the cell door was already open. I saw Inmate Watkins (H50916), the Plaintiff in this case, standing at the back of the cell, already in handcuffs.

3. Inmate Watkins began walking towards me. I ordered him to turn around and walk backwards towards me. Inmate Watkins complied with my orders, but began turning his head and looking back at me. It appeared to me that Inmate Watkins's demeanor had changed and he had become more agitated. When Watkins got to the front of the cell, I took a hold of his left forearm with my right hand and began escorting him out of the cell towards the upper A section showers.

4. During the escort, Inmate Watkins suddenly stopped near cell 208 and turned his head towards my face. I ordered Inmate Watkins to continue walking and to turn his head and face forward. Inmate Watkins refused to comply with my orders and stated, "Fuck you pig. I will do whatever the fuck I want." I then ordered Inmate Watkins to continue walking and to turn his head and face forward a second time. At that time, Inmate Watkins tried to break free of my hold on his left forearm by turning his body towards me. He also simultaneously gargled saliva in his mouth. I perceived Inmate Watkins attempt to break away from my hold and gargling saliva in his mouth as an imminent threat that Inmate Watkins was going to spit on me or otherwise physically batter me.

5. Because I believed that Inmate Watkins was going to spit on me or otherwise physically batter me, I yelled "get down," and wrapped my left arm around Inmate Watkins's upper torso area, while maintaining my hold on his left forearm with my right hand. I then used my body weight to force Inmate Watkins in a downward motion towards the ground. Inmate Watkins landed on his back when I forced him to the ground. I was then kneeling next to Inmate Watkins. Once he was on the ground, Inmate Watkins began thrashing his body from side-to-side, so I placed my hands on his chest in an effort to restrain him.

6. I ordered Inmate Watkins to stop resisting, and he eventually complied. Officer S. Armstead responded to the incident and held Inmate Watkins legs. I grabbed Inmate Watkins's right shoulder with both of my hands and, with Officer Armstead's assistance, forced Inmate Watkins into a prone position on his stomach. I turned Inmate Watkins over onto his stomach because I was concerned that, based on his conduct, he may still attempt to spit on me. I then used my institutional radio and announced, "Code I, Bravo 5.'" A few moments later, Officer T. Walters arrived and took custody of Inmate Watkins from me.

7. Before the August 18, 2016 incident, I was not familiar with Inmate Watkins. l had no prior experience with Inmate Watkins and harbored no ill will toward him. I had no desire to harm him, or any other inmate.

7

> 8. At no time did I punch Inmate Watkins, in the face or anywhere else. And while I may have uttered some words during the August 18, 2016 incident in addition to what is described above (I do not recall any), I did not accuse Inmate Watkins of "eye-fucking" me or use any other rude or profane language in addressing Inmate Watkins.
>
> 9. During the incident on August 18, 2016, I believed that Inmate Watkins was going to attempt to spit on or otherwise physically batter me. I only used the amount of force that I believed was necessary to subdue him.

V. Analysis

The parties dispute the material facts essential to the merits of plaintiff's excessive force claim, specifically: (1) whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) and efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 6-7. Although plaintiff argues that the weight of the evidence tips in his favor, the court does not weigh the evidence on a motion for summary judgment. To prevail, the moving party must "show[] that there is no genuine dispute as to *any* material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Plaintiff has not met this burden. Rather, it is clear that a jury is required "to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

Accordingly, the court recommends that plaintiff's motion for summary judgment be denied.

VI. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment, ECF No. 28, be denied; and

2. This case proceed to trial on plaintiff's Eighth Amendment excessive force claim against defendant Murphy.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE